IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID LIM

    v.                  :   Civil Action No. DKC 10-2574

THE UNITED STATES OF AMERICA,
et al.

**MEMORANDUM OPINION**

Presently pending and ready for review is the motion of Defendants to dismiss or in the alternative for summary judgment. (ECF No. 56). The issues have been fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing deemed necessary. For the reasons that follow, Defendants' motion will be granted.

## I. Background

### A. Factual Background[1]

Plaintiff, Dr. David Lim, is a former Commissioner's Fellow with the United States Food and Drug Administration whose position was terminated on June 5, 2009. His Second Amended Complaint, filed *pro se*, identifies the United States and eleven individuals, in both their individual and official capacities, as defendants and asserts twenty-three counts arising from

---

[1] Unless otherwise indicated, these facts are taken from Plaintiff's Second Amended Complaint.

conduct and events relating to Lim's tenure as a fellow and his termination from that position.[2]    The eleven individual defendants are:  (1) Margaret Hamburg, Commissioner of Food and Drugs; (2) Joshua Sharfstein, FDA Office of the Commissioner, Principal Deputy Commissioner; (3) Jesse Goodman, FDA Office of the Commissioner, Deputy Commissioner and Chief Scientist; (4) Kimberly Holden, FDA Office of Commissioner, Assistant Commissioner for Operations; (5) L'Tonya Davis, FDA Office of the Commissioner, Executive Director; (6) Dr. Jonathan Sackner-Bernstein, FDA Associate Center, Director for Post-Market Operation; (7) Kelly Wilkicki, FDA Coordinator of the Commissioner's Fellowship Program; (8) Mary Long, FDA Office of the Commissioner, Public Affairs Specialist; (9) Nicole Troen, Department of Health and Human Services ("DHHS"), Human Resources Specialist; (10) William M. Darracott, Chief Debt Services Section DHHS; and (11) Nathan Dickey, DHHS Human Resources Specialist.

The FDA Commissioner's Fellowship Program is a two-year program whereby health professionals and scientists get training and experience at the FDA facility in Silver Spring, Maryland. The Fellowship Program combines coursework in subjects such as

---

[2] Although the United States is listed as a defendant, none of the twenty three specific counts alleged that the United States as a single entity is liable.

public policy, FDA law, epidemiology, and clinical trials and design with the development of a regulatory science research project. Each fellow is paired with an FDA senior scientist as a preceptor to mentor the fellow in the development of his or her project.

Lim applied for a fellowship position in July 2008. He made it through the first screening round and was asked to review a list of potential preceptors and rank his first choices. Lim ranked Dr. Jonathan Sackner-Bernstein highly because of his interest in working on Dr. Sackner-Bernstein's advertised project, "the CDRH Post-Market Transformation Initiative." Dr. Sackner-Berstein conducted a phone interview of Lim during which Lim was given an oral offer to work with Dr. Sackner-Bernstein. On October 15, 2008, Lim received a tentative offer via email indicating that he had been selected for the program, followed by an official offer letter. The official letter indicated that Lim's offer of employment as a Staff Fellow was "an Excepted Appointment Not-To-Exceed 2 years and it will become effective October 26th, 2008," pursuant to 42 U.S.C. § 209(g).

Lim accepted the offer and began his fellowship on October 28, 2008. In November, Lim received an email from Kelly Wilkicki describing the requirements for the submission of the research project description required by all fellows and due on

December 31, 2008.  Lim's complaint chronicles his difficulties obtaining assistance from Dr. Sackner-Bernstein in selecting a project and developing his project description and alleges that Dr. Sackner-Bernstein had no projects for Lim, despite advertising the availability of a number of projects for an incoming fellow.

Because of these difficulties, Lim sought an extension of the deadline.  In early 2009, Lim obtained Dr. Sackner-Bernstein's approval to pursue a project to establish a collaboration with the United States Patent and Trademark Office ("USPTO").  Lim held an initial meeting with individuals at the USPTO, but alleges that subsequently he was prohibited from contacting anyone at the USPTO about his research.  Lim contends this instruction was at least in part motivated by Dr. Sackner-Bernstein's desire to conceal patient safety information from the public.  Lim contends that by March of 2009 Dr. Sackner-Bernstein had forced him to change the scope and focus of his research project drastically.  Despite making these changes, on March 25, 2009, Lim received an email from Dr. Sackner-Bernstein expressing disapproval with Lim's progress to date.

On March 5, 2009, prompted by reports from other fellows in the program that Lim had sent several discourteous emails, the FDA issued a "memorandum of expectations" to Lim clarifying its

professional expectations. Lim contends that the allegations within the memorandum are false.

On April 6 and 7, 2009, Lim emailed Defendant Sharfstein to identify his difficulties establishing a collaboration with the USPTO and to ask for an opportunity to brief Dr. Sharfstein in person. On April 7, 2009, Lim also received an email from Ms. Wilkicki noting that Lim still had failed to submit the project proposal, originally due the prior December, and indicating that "failure to submit your approved project description by 5:00 p.m. on April 15, 2009, may result in adverse action, up to and including your removal from the Federal Service." (ECF No. 42 ¶ 68). On April 15, 2009, Lim petitioned to continue working on his initial research project without Dr. Sackner-Bernstein's signature. On June 5, 2009, Lim was given a Notice of Termination.

### B.  Procedural Background

On or about July 1, 2009, Lim filed an administrative complaint asserting a number of allegations against the present Defendants under the Federal Tort Claims Act and other laws. Lim filed Amendments/Additions to his complaint on October 7, 2009, and the Department of Health and Human Services denied all the administrative tort claims on November 16, 2009.

Lim also filed a complaint with the Office of Special Counsel in October 2009, alleging that he was terminated for

whistle-blowing activities. The OSC terminated its investigation and Lim filed an individual right of action ("IRA") appeal with the Merit Systems Protection Board ("MSPB") regarding his removal. An administrative law judge dismissed the appeal because he determined that Lim had failed to make a non-frivolous allegation that he had engaged in protected whistle-blowing activity and therefore the MSPB lacked jurisdiction. A petition for review of this decision is pending.

In October 2009 Lim had also filed a complaint in the United States Court of Federal Claims alleging breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel, and a Fifth Amendment taking of his property and liberty interests. (ECF No. 56-9, First Amended Complaint, *Lim v. United States*, No. 09-cv-00732-RHH, (Fed. Cl. Jan. 22, 2010)). This complaint was dismissed on July 9, 2010, for lack of subject matter jurisdiction. The Court of Federal Claims held that Lim could not state a claim for breach of contract because "absent special legislation to the contrary, federal employees serve by appointment rather than by contract." (ECF No. 56-10, at 1-2). The Court of Federal Claims further held that Lim's takings argument did not state a claim for which it had jurisdiction because the Tucker Act requires claimants of Fifth Amendment takings claims in the Court of Federal Claims to

concede that the government action giving rise to the alleged taking was lawful, a concession Lim would not make. (*Id.* at 2). Finally, that court noted that it did not have jurisdiction over tort claims. (*Id.* at 3).

This case began in December 2009 when Lim filed his first complaint in the United States District Court for the Western District of Virginia. (ECF No. 1). Lim twice amended his complaint after Defendants filed motions to dismiss. (*See* ECF Nos. 13, 42). Upon Defendants' motion, the case was transferred to the District of Maryland in September 2010. (ECF No. 45). Defendants subsequently moved to dismiss or in the alternative for summary judgment on all claims of Lim's second amended complaint. (ECF No. 56).

## II. Standard of Review

The Defendants have moved to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) or for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), or alternatively, for summary judgment pursuant to Fed.R.Civ.P. 56. As the court has an obligation to satisfy itself of its own subject matter jurisdiction, Defendants' motion pursuant to Fed.R.Civ.P. 12(b)(1) will be considered first.

The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166

F.3d 642, 647 (4th Cir. 1999).  In a 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it.  *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647.  The court should grant the 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Richmond*, 945 F.2d at 768.

## III. Analysis

### A.  Civil Service Reform Act

Defendants argue that the entirety of Lim's complaint should be dismissed because it is preempted by the Civil Service Reform Act.  Defendants contend that the CSRA sets forth an elaborate scheme to provide administrative remedies for claims arising from personnel actions and that these remedies are exclusive and preemptive.  (ECF No. 56-1, at 11-12).  Lim does not respond to this argument in his opposition.  He instead argues that is premature to challenge the factual bases for his allegations because he has not yet had an opportunity to conduct discovery.

The Civil Service Reform Act, Pub.L.No. 95-454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.) "comprehensively overhauled the civil service system," creating

a "framework for evaluating adverse personnel actions against [federal employees]." *Hall v. Clinton*, 235 F.3d 202, 204 (4th Cir. 2000) (quoting *Lindahl v. Office of Personnel Mgmt.*, 470 U.S. 768, 773-74)). "It prescribes in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review." *Id.* (quoting *United States v. Fausto*, 484 U.S. 439, 443 (1988)). It was enacted in part to address the "haphazard arrangements for administrative and judicial review of personnel action." *Fausto*, 484 U.S. at 444. Further, the Act addresses the wide variation in decisions regarding personnel actions relating to federal employees that resulted from concurrent jurisdiction of multiple jurisdictions over the cases. *See id.* at 445. Courts have held that in order to effectuate these goals the remedial scheme established by the CSRA is the exclusive remedy for claims arising from federal employment and have declined to exercise jurisdiction over such claims brought in federal district court, whether alleging tort claims pursuant to the Federal Tort Claims Act, or *Bivens* actions for alleged constitutional violations. *Rivera v. United States*, 924 F.2d 948, 951 (9th Cir. 1991) (holding that CSRA precludes suits under the Federal Tort Claims Act); *Premachandra v. United States*, 739 F.2d 392, 394 (8th Cir. 1984) (same); *Grisham v. United States*, 103 F.3d 24, 27 (5th Cir. 1997) (same); *Bush v. Lucas*, 462 U.S.

367 (1983) (holding that Court will not fashion new judicial remedy for violation of First Amendment where Congress created comprehensive remedial scheme to protect civil servants); *Hall*, 235 F.3d at 206 (holding that CSRA precludes both *Bivens* action and statutory claims arising out of federal employment relationship and affirming dismissal for lack of subject matter jurisdiction).

**B.    Lim's Tort and Constitutional Claims**

The operative questions then are whether the CSRA applies to Lim's position and whether his alleged claims relate to personnel actions.    Beginning with the scope of the CSRA, 5 U.S.C. § 2101(1) specifies that for the purposes of the title "the 'civil service' consists of all appointive positions in the executive, judicial, and legislative branches of the Government of the United States, except positions in the uniformed services."    Title 5 U.S.C. § 2105(a)(1)(E) further defines "employee" as "an individual who is appointed in the civil service by . . . the head of a Government controlled corporation."[3]  Lim was appointed to his position pursuant to 42 U.S.C. § 209(g) which specifies:

---

[3] 5 U.S.C. §§ 2105(a)(2)-(3) further requires than an employee be an individual who is :

10

> In accordance with regulations, individual scientists, other than commissioned officers of the Service, may be designated by the Surgeon General to receive fellowships, appointed for duty with the Service without regard to the civil-service laws, may hold their fellowships under conditions prescribed therein, and may be assigned for studies or investigations either in this country or abroad during the terms of their fellowships.

Defendants contend that pursuant to this provision, Lim was a member of the civil service and subject to the exclusive remedial scheme of the CSRA. (ECF No. 56-1, at 13). Lim does not directly address this contention in his opposition, but one potential obstacle to Defendants' argument is the language in § 209(g) stating that fellows "are appointed for duty with the Service without regard to the civil-service laws." Defendants note that despite this language, at least one district court has determined that FDA fellows are civil service employees subject to the CSRA remedial scheme. (*See* ECF No. 56-1, at 14) (citing *Afshari v. Leavitt*, No. 1:05-CV-127, 2006 WL 3030323 (N.D.W.Va. Oct. 23, 2006)).

---

> (2) engaged in the performance of a Federal function under authority of law or an Executive act; and

> (3) subject to the supervision of an individual named by paragraph (1) of this subsection while engaged in the performance of the duties of his position.

The *Afshari* decision is in accordance with several decisions by the Merit Systems Protection Board holding that the "without regard to the civil service laws" language in 42 U.S.C. § 209(g) is meant only to provide agencies with some flexibility in their appointment of fellows and to indicate that fellowship appointments are not subject to the standard appointment requirements for civil service employees such as the veteran's preference or conditioning employment on the passage of competitive examinations. *See Fishbein v. Dep't of Health & Human Servs.*, 102 M.S.P.R. 4, ¶¶ 13-14 (2006); *Usharauli v. Dep't of Health & Human Servs.*, 2011 M.S.P.B. 54, ¶ 12 (2011). This interpretation is further supported by the decision of the United States Court of Appeals for the Federal Circuit in *Dodd v. Tennessee Valley Authority*, 770 F.2d 1038, 1040 (Fed.Cir. 1985), holding that identical language regarding appointment to the Tennessee Valley Authority exempted that agency from conditioning its appointments on passage of competitive examinations but did not render appointed employees entirely outside the scope of the civil service laws. Lim's fellowship position, therefore, made him a member of the civil service subject to the CSRA remedial scheme for applicable offenses.[4]

---

[4] Lim's position is also a covered position as defined by 5 U.S.C. § 2302(B) such that the merit systems principles apply to his employers.

The CSRA remedial scheme applies to all actions alleging that employers engaged in prohibited personnel actions. Personnel action is defined as any appointment, promotion, disciplinary or corrective action, detail, transfer, or reassignment, reinstatement, restoration, reemployment, performance evaluation, decision concerning pay or benefits and the like, decision to order psychiatric examination, and any other significant change in duties, responsibilities, or working conditions. *See* 5 U.S.C. § 2302(a)(2)(A)(i)-(xi). Prohibited personnel actions include taking personnel actions violative of the "merit system principles contained in section 2301 of [the] title." 5 U.S.C. § 2302(b)(12). The merit systems principles include, among other things, treating employees fairly and equitably "with proper regard for their privacy and constitutional rights," (5 U.S.C. § 2301(b)(2)), that "all employees should maintain high standards of integrity, conduct, and concern for the public interest," *id.* § 2301(b)(4), that "employees should be provided effective education and training," *id.* § 2301(b)(7), and that employees should be protected against arbitrary action and personal favoritism. *Id.* § 2301(b)(8)(A).

Although Lim's complaint alleges the torts of negligence, negligent hiring, negligent retention, negligent supervision, intentional infliction of emotional distress, and invasion of privacy and violations of his constitutional rights under the

13

First and Fifth Amendment, the underlying acts that form the basis of Lim's claims all fall under the umbrella of prohibited personnel actions and are preempted by the CSRA's remedial scheme.

Beginning with the tort-based claims, count I is a claim for negligence against all Defendant employees, in essence alleging that they are liable for failing to prevent the harm caused when Dr. Sackner-Bernstein did not properly advise and guide Lim. Counts II-IV, for gross negligence and the negligent hiring and retention of Dr. Sackner-Bernstein and Ms. Wilkicki, similarly target the harm caused by these individuals' alleged lack of experience and guidance when supervising Lim. Counts V-XIII are all claims for intentional infliction of emotional distress against various employees of the FDA or Department of Health and Human Services. In some cases it is difficult to discern from Lim's claims what specific actions he is alleging constituted intentional infliction of emotional distress, but he does clearly allege that Defendants fabricated a notice of termination (count VI), made "fictional and false statements to the DLLR and public" (count VII), disregarded Lim's request to meet to discuss his work conditions (count VIII), committed discriminatory and retaliatory acts (count IX), engaged in "unlawful and corrupt activities with deceptive intent to conceal serious patient safety issues intending to cause

systemic breakdown at the Agency" (count X), disposed of Lim's administrative complaint too quickly and with deceptive intent (count XI), falsely advised Lim of his rights and the reason for his termination (count XII); and withdrew a request to ask Lim to discuss his fellowship experience (count XIII). Count XIV alleges that false statements by Dr. Sackner-Bernstein concerning Plaintiff's work performance constitute an invasion of Lim's privacy. The final tort-based claim in count XXII alleges that Defendants L'Tonya Davis, Kimberly Holden, Jesse Goodman, and Joshua Sharfstein are liable for negligent supervision of Dr. Sackner-Bernstein and Ms. Wilkicki because they lacked the experience and training necessary to coordinate the fellowship program and provide guidance to Plaintiff. All of these claims relate to personnel actions as defined in the CSRA because they are ultimately claims that Lim was not treated equitably or fairly while employed as a fellow or that he was not properly trained or supervised. These claims are preempted and cannot be brought in federal district court pursuant to the Federal Tort Claims Act.

The CSRA remedial scheme also precludes Lim from bringing *Bivens* claims for personnel actions that are alleged to be constitutional violations. *See Bush*, 462 U.S. at 390; *Pinar v. Dole*, 747 F.2d 899, 913 (4th Cir. 1984) (affirming that plaintiff's *Bivens* claim alleging first amendment violations

could not be brought in federal district court and noting "we agree with the district court that Congress clearly intended the CSRA to be the exclusive remedy for federal employees and the Court of Appeals for the Federal Circuit to be the sole forum for judicial review."), *cert. denied*, 471 U.S. 1016 (1985). Thus, counts XIX-XXI asserting *Bivens* actions for constitutional violations are precluded to the extent the actions alleged to violate Lim's constitutional violations are personnel actions.[5]

Counts XIX, XX, and XXI are *Bivens* claims alleging that Defendants violated Lim's First and Fifth Amendment rights when they demonstrated "deliberate indifference to his reports of concerns and research findings of serious patient safety issues" and when they wrongfully discharged him in response. These allegations can be classified as personnel actions, not only because the merit system principles include a requirement that employers treating employees fairly and equitably "with proper regard for . . . their constitutional rights" but also because the actions relate to this conditions of his employment and his termination.

---

[5] Even federal employees exempted by Congress from the Civil Service Reform Act and who, thus, lack a CSRA remedy have been precluded from pursuing *Bivens* actions for claims arising from a federal employment relationship. *See, e.g., Zimbelman v. Savage*, 228 F.3d 367, 370-71 (4th Cir. 2000); *Mann v. Haigh*, 120 F.3d 34, 38 (4th Cir. 1997).

There is some disagreement as to whether the CSRA precludes actions seeking equitable relief for constitutional violations. The D.C. Circuit, Third Circuit, and Ninth Circuit have held that Congress did not limit courts' equitable jurisdiction over constitutional claims when it enacted the CSRA. *Hubbard v. U.S. E.P.A. Adm'r*, 809 F.2d 1, 11-12 (D.C.Cir. 1986); *Spagnola v. Mathis*, 859 F.2d 223; 229-30 (D.C.Cir. 1988), *aff'd en banc*; *Mitchum v. Hurt*, 73 F.3d 30, 34-36 (3$^d$ Cir. 1995) ("the court's power to enjoin unconstitutional acts by the government, however, is inherent in the Constitution itself"); *Am. Fed. Of Gov't Employees Local 1 v. Stone*, 502 F.3d 1027, 1037-39 (9th Cir. 2007) (holding that plaintiffs were entitled to seek equitable relief for alleged violation of their First Amendment rights notwithstanding the CSRA). The Second and Tenth Circuits, to the contrary, have held that the CSRA does preclude claims for equitable relief. *Dotson v. Griesa*, 398 F.3d 156, 180-81 (2$^d$ Cir. 2005); *Lombardi v. Small Business Admin*, 889 F.2d 959, 961 (10th Cir. 1989). Four circuits, including the Fourth Circuit, have declined to decide the issue. *Irizarry v. United States*, 427 F.3d 76, n.2 (1st Cir. 2005) (declining to decide whether equitable relief from constitutional violations is precluded by CSRA); *Paige v. Cisneros*, 91 F.3d 40, 44 (7th Cir. 1996) (recognizing disagreement but finding it was "not . . . necessary to choose between these lines of authority because

[plaintiff] lacks . . . [a] substantial constitutional claim");
*Hardison v. Cohen*, 375 F.3d 1262, 1269 (11th Cir. 2004) (holding
that it need not decide whether plaintiff's request for
equitable relief was barred because plaintiff had not
established a property interest protected by the Fifth
Amendment); *Bryant v. Cheney*, 924 F.2d 525, 528 (4th Cir. 1991)
(deciding case on other grounds).

The court need not resolve the question here because Lim
has not clearly stated a claim for equitable relief from a
constitutional violation.  Counts XV, XVI, XVII, and XVIII
allege constitutional violations and seek compensatory and
consequential damages from the Defendant employees in their
official capacities for those violations.  Although they are not
labeled as *Bivens* claims they are the functional equivalents of
*Bivens* claims and do not indicate that Lim is seeking equitable
relief in any form.  Lim's complaint does include a request for
"injunctive and declaratory relief" in the final prayer for
relief, but nowhere in the body of the complaint does he specify
the counts for which he seeks such relief or what type of
injunction or other equitable remedy he is seeking.

To the extent counts XV, XVI, XVII, and XVIII seek damages
for constitutional violations committed by Defendant employees
in their official capacities they must also be dismissed for
lack of subject matter jurisdiction.  Lim correctly labeled only

the suits seeking damages for constitutional violations from the defendant in their individual capacities as *Bivens* actions because *Bivens* does not apply to suits against government officials in their official capacity. *See, e.g., Randall v United States*, 95 F.3d 339, 345 (4th Cir. 1996) ("*Bivens* did not abolish the doctrine of sovereign immunity of the United States. Any remedy under *Bivens* is against federal officials individually, not the federal government."). Moreover claims for constitutional violations cannot be brought against officers in their official capacity absent express consent by the United States to be sued for the alleged conduct. As the Supreme Court has recognized, "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212, (1983). Federal courts have no jurisdiction over claims against the United States asserting general violations of the Constitution not authorized by a specific statute.

### C.    Lim's Privacy Act Claim

Finally, Lim's claim under the Privacy Act, 5 U.S.C. §§ 552a, in count XXIII suffers from a number of flaws. First, the claim is preempted by the CSRA to the extent Lim is invoking the Privacy Act to challenge the basis for his discharge. In count XXIII Lim alleges that "The FDA had negligently and

recklessly applied wrongful regulations (5 C.F.R. § 315.804) to remove the plaintiff, the said regulation of which was for terminating probationers for unsatisfactory performance or conduct applicable to career and career-conditional employment." Thus while labeled as a Privacy Act violation, Lim is ultimately challenging the basis for his discharge, a personnel decision which cannot be challenged outside the framework of the CSRA.

In addition, Lim's Privacy Act count identifies only individual employees, but the text of the Privacy Act authorizes suit against the offending agency, not against individual federal employees.[6] Moreover, courts have consistently declined to imply a *Bivens*-style right of action against individual officers for conduct that would be actionable under the Privacy Act. *See Patterson v. FBI*, 705 F.Supp. 1033, 1045 n.16 (D.N.J. 1989), *aff'd* 893 F.2d 595 (3[d] Cir.), *cert. denied*, 498 U.S. 812

---

[6] Specifically, the relevant provision of the Privacy Act creating a private cause of action, 5 U.S.C. § 552a(g)(1)(C), provides that:

> whenever an agency fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual, the individual may bring a civil action against the agency.

(1990); *Downie v. City of Middleburg Heights*, 301 F.3d 688, 698 (6th Cir. 2002); *Williams v. Dept. of Veterans Affairs*, 879 F.Supp. 578, n.5 (E.D.Va. 1995).

## IV.  Conclusion

For the foregoing reasons, the motion to dismiss filed by Defendants will be granted.  A separate order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
